## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| *In re:* | : | **Chapter 11** |
| | : | |
| **LiveConnections.org** | : | |
| **d/b/a World Café Live,** | : | |
| | : | |
| **Debtor.** | : | **Bankruptcy No. 26-10973(AMC)** |
| | : | |
| *In re:* | : | **Chapter 11** |
| | : | |
| **Real Entertainment – Philadelphia, LLC,** | : | |
| | : | |
| **Debtor.** | : | |
| | : | **Bankruptcy No. 26-10974(AMC)** |

**MOTION OF THE DEBTORS AND DEBTORS-IN-POSSESSION FOR AN ORDER PURSUANT TO 11 U.S.C. §363 (I) PERMITTING USE OF CASH COLLATERAL AND PROVIDING ADEQUATE PROTECTION TO PARTIES WITH AN INTEREST IN CASH COLLATERAL, (II) AUTHORIZING PAYMENT OF PREPETITION WAGES, (III) PROVIDING FOR AN EXPEDITED HEARING, REDUCED NOTICE PERIOD AND LIMITED NOTICE PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9006(C)(1) AND E.D. PA. L.B.R. 5070(F) AND FOR (IV) RELATED RELIEF**

LiveConnections.org d/b/a World Café Live ("World Café Live") and Real Entertainment – Philadelphia, LLC ("REP LLC" and, collectively, the "Debtors") by and through proposed counsel, Ciardi Ciardi & Astin, hereby request an order granting authority to (I) use Cash Collateral and Provide Adequate Protection to Parties with Interest in Cash Collateral, (II) pay Prepetition Wages, (III) conduct an Expedited Hearing, Reduced Notice Period and Limited Notice Pursuant to Federal Rule of Bankruptcy Procedure 9006(c)(1) And E.D. Pa. L.B.R. 5070(f), and providing for (IV) related Relief (the "Motion") and in support thereof, respectfully represent:

1

## JURISDICTION

1. This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this motion is a core proceeding pursuant to 28 U.S.C. §157(b). Venue of this case is proper in this district pursuant to 28 U.S.C. §§1408 and 1409.

## BACKGROUND

2. On March 10, 2026 (the "Petition Date"), the Debtors filed separate, voluntary petitions for reorganization pursuant to title 11 of chapter 11 of the United States Code, as Amended (the "Bankruptcy Code"). A motion for joint administration (the "Joint Admin. Motion") was also filed on the same date.

3. No trustee or examiner has been appointed in these Chapter 11 cases. As of today's date, no creditors' committee has been appointed in these Chapter 11 cases by the United States Trustee.

4. As of the Petition Date, LiveConnections.org d/b/a World Café Live ("World Café Live") has Eighty-Six (86) employees, including sales, box office, management, and service professionals among others, and pays approximately $45,000 in gross payroll per bi-weekly pay period.

5. LiveConnections.org d/b/a World Café Live is a Pennsylvania not-for-profit corporation that operates World Café Live, a prominent nonprofit independent music venue, educational hub, and community space in Philadelphia, Pennsylvania. Real Entertainment – Philadelphia, LLC is a Pennsylvania not-for-profit limited liability corporation and is the wholly owned subsidiary of World Café Live.

6.  The sole member of both Debtors is Joseph Callahan. The Debtors are under the same management and work in the same non-profit space to fund, maintain, and grow the World Café Live experience.

7.  Since obtaining control of the Debtors in March 2025, Mr. Callahan and his philanthropic entity, the Bean Foundation ("Foundation"), have made grants of over $2,150,000 to the Debtors and have also made substantial changes to improve the cash flow and sustainability of the venue overall. In addition, there have been approximately $185,000 in loans made to the Debtors.

8.  The Debtors have made substantial progress in reducing the losses from operations and is at a point where cash flow will support operations without additional cash infusions.

9.  PIDC Community Capital ("PIDC") has a lien on the assets of the Real Entertainment Philadelphia Debtor as a result of the following loans made to the Debtors by PIDC:

    (a)  Loan # 4753-01-01 in the original amount of $1,500,000 with a February 18, 2026 payoff statement received by the Debtors in the amount of $581,140.39.

    (b)  PIDC is the only party with a filed UCC-1 against Real Entertainment Philadelphia LLC

10.  The Delaware Valley Regional Economic Development Fund ("DVREDF" and, together with PIDC, the "Lenders") obtained a judgment entered by confession in *Delaware Valley Regional Economic Development Fund v. LiveConnections.org (Phila. CCP No. 251100359)* in the amount of $563,152.43 and has a lien on the assets of the Debtor World Café Live. DVREDF is the only party with a filed UCC-1 against World Café Live.

11.     The Pennsylvania Department of Revenue ("PADOR") has a lien on the assets of the Debtors in the amount of $205,496.00 on account of unpaid sales tax.

12.     The City of Philadelphia Department of Revenue ("Phila. DOR" and, together with PADOR, the "Taxing Authorities"), similarly, has a lien on the assets of the Debtors in the amount of $268,754.00 on account of unpaid amusement tax and liquor tax for which the Phila. DOR sought and obtained judgments against the Debtors.  On February 11, 2026, the Debtors received a Notice of Revocation of Commercial Activity License/Stop Work Order effective as of March 11, 2026.

13.     The University of Pennsylvania (the "University") and REP, LLC are parties to a license agreement (the "License Agreement") dated November 24, 2003 whereby the University agreed to license its WORLD CAFE trademark and derivatives thereof for use in connection with restaurant and bar services incorporating live music performances at the Hajoca Building owned by the University located at 3025 Walnut Street, Philadelphia, Pennsylvania (the "Hajoca Building").The license agreement was amended and restated on or about June 25, 2012, which was then again amended on or about August 25, 2016 and November 26, 2019.  The University alleges the Debtors have failed to pay certain license fees pursuant to the License Agreement and that it has a lien on the WORLD CAFÉ trademark and derivatives.  The University has filed suit against the Debtors in the United States District Court for the Eastern District of Pennsylvania at Case No. 26-cv-1034.

14.     The University leases the Hajoca Building to its wholly owned subsidiary Hajoca 3025, Inc. ("Hajoca Inc."), which in turn subleased a portion of the Hajoca Building to REP, LLC for purposes of operating the World Cafe Live business.  The Debtors and the University

4

have substantial material disputes.  The Debtors and the University (through Hajoca Inc.) have each sued the other in the Court of Common Pleas of Philadelphia County at Case No. 251202061 and Case No. 250702482. These cases were recently consolidated for purposes of discovery and trial under Case No. 251202061.

15.     By late 2024, the Debtors were in severe financial distress, carrying millions of dollars in debt and hemorrhaging $70,000 per month. The University was eager to retain REP LLC because World Cafe Live provided a substantial benefit to the University itself as well as the University's public radio station, WXPN, who was also a tenant in the Hajoca Building. The University made several representations and promises about actions that it would take (and not take) to ensure that World Cafe Live could continue to operate in the Building if Mr. Callahan and the Foundation provided the necessary funding and operational support to prevent World Cafe Live's immediate collapse. As outlined above, Mr. Callahan and the Foundation relied on these representations and made substantial cash infusions to keep the Debtors afloat. Unfortunately for all involved, the University subsequently reneged on its promises and representations, initiated several lawsuits, and set in motion a series of events that has now jeopardized a pillar of the University City community.

## RELIEF REQUESTED

16.     The Debtors require use of their cash and accounts to continue operations of their business.  The assets of the Debtor which consist of cash collateral are food and liquor inventory (estimated at $43,000) and cash ($23,000).  The Debtors aver that the continued operations of the Debtor will maintain the cash and inventory at a similar level as existed at the Petition Date.

5

17.     Section 363(c) of the Bankruptcy Code allows a debtor to use, sell or lease cash collateral if each entity that has an interest in cash collateral consents or the Court authorizes the use. *See* 11 U.S.C. §363(c)(2).

18.     The Debtors have prepared a thirty (30) day budget (the "Budget") detailing proposed use of cash collateral from the Petition Date through March 31, 2026.  This budget is attached hereto as **Exhibit A**. The Debtors, by this Motion, initially seek use of cash collateral from the Petition Date through March 31, 2026.

19.     The continued use of cash collateral will allow the Debtors to continue operating, continue serving their customers, booking artists and holding events, and continue paying their employees so that the Debtor can continue with their proposed reorganization and proposing a plan to satisfy the claims of creditors.

20.     Moreover, the Debtors propose to provide adequate protection to the Lenders and any other party asserting a lien on cash or accounts, in the form of a replacement lien of the same extent, priority and validity as existed pre-petition.

21.     The Debtors believe that the request to use cash collateral is proper, reasonable and necessary to continue the Debtors' operations.

22.     Approval of the Debtors' request to use cash collateral is in the best interest of the Debtors and creditors of their estates.

23.     In order to maintain the Debtors' operations, the Debtors require the use of cash collateral for the payment of expenses as more specifically set forth in Budget.  Through the payment of the expenses detailed in the budget, the Debtors will be able to maintain the status quo while also facilitating a reorganization and enhancing the collateral.

24.     Finally, to maintain employee morale and preserve the Debtors' workforce at this critical time, to reduce the disruption caused by the bankruptcy filing on the Debtors' business operations, and to minimize the personal hardship the Debtors' employees will suffer if its employee-related obligations are not paid when due, the Debtors request entry of an order authorizing, but not requiring, the Debtors (a) to pay, in the ordinary course of business, all prepetition employee compensation earned from February 26, 2026 through March 12, 2026 payable on March 17, 2026; (b) to honor and take all necessary actions to continue in the ordinary course of business until further notice (but not to assume), certain employee-related programs, policies and plans that were in effect as of the filing of this chapter 11 bankruptcy case; and (c) to make, in the ordinary course of business, all normal and customary deductions and withholdings and pay all taxes associated with the Debtors' obligations to employees.

25.     By this motion, the Debtors do not seek authorization to assume any contracts relating to senior executives currently employed by the Debtor.  Further, the Debtors do not seek to pay any pre-petition compensation or other amounts to executives, amounts due in connection with the continuation of the employee benefits described herein, and expense reimbursement amounts, all in accordance with existing plans, policies, and programs.

26.     As of the Petition Date, the Debtors have Eighty-Six employees (the "Employees").  In the ordinary course of business, the Debtors issue payroll checks on a bi-weekly basis, totaling approximately $45,000 in gross wages per pay period.

27.     The Debtors' next payroll is scheduled to occur on March 17, 2026.  As of the Petition Date, the Debtors owe their employees pre-petition wages for the pay period ending March 12, 2026 (the "Unpaid Compensation").  Items of Unpaid Compensation were outstanding

7

on the Petition Date because the Debtors' next scheduled payroll disbursement is not until March 17, 2026 for the pay period ending March 12, 2026.

28.     The Debtors hereby seeks authority to pay Unpaid Compensation. The Debtors do not believe that the Unpaid Compensation payable to any one employee exceeds $15,150. No officer or shareholder will receive unpaid pre-petition compensation but will be paid for post-petition services.

29.     The Debtors do not believe, at present, that any of the Employees are owed aggregate amounts for services rendered prior to the Petition Date in excess of the $15,150 amount to which such employees would be entitled with administrative priority under section 507 of the Bankruptcy Code. The Debtors urge the Court to approve the payment of the amounts owed to the Debtors' employees, given the critical nature of the employees to the Debtors' businesses, as stated above. The Debtors believe that failure to pay the employees for their pre-petition services in full would have grave consequences for the Debtors' ability to function in the future.

30.     As a result of the commencement of the chapter 11 case, and in the absence of an order of the Court providing otherwise, the Debtors will be prohibited from paying or otherwise satisfying prepetition obligations regarding Unpaid Compensation (collectively, the "Prepetition Employee Obligations"), and the checks, wire transfers and direct deposit transfers issued in respect of the Prepetition Employee Obligations will be dishonored.

31.     Accordingly, pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code and the "necessity of payment" doctrine, the Debtors seek authority to; (i) pay outstanding Prepetition Employee Obligations; and (ii) continue practices, programs and policies in effect as

8

of the Petition Date with respect to the Prepetition Employee Obligations. The Debtors further request that the Court authorize and direct the bank at which the Debtors maintain the account from which the Debtors' payroll obligations are disbursed, to honor and pay all prepetition and post-petition checks issued or to be issued and fund transfers requested or to be requested, by the Debtors in respect of the Prepetition Employee Obligations. The Debtors also seek authority to issue new post-petition checks or fund transfer requests with respect to prepetition obligations that may have been dishonored by the bank. The relief requested herein is essential and necessary to the Debtors' continued operations in chapter 11 and to an effective reorganization.

32.      The payment of the Prepetition Employee Obligations is justified under Section 105(a) of the Bankruptcy Code and the well-established "necessity of payment doctrine." The Debtors believe that the amounts they seek to pay are entitled to priority under Sections 507(a)(3) and (a)(4) of the Bankruptcy Code, with very few conditional exceptions.

33.      Under the "necessity of payment doctrine" and Section 105(a) of the Bankruptcy Code, courts have consistently permitted immediate payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors, specifically including payment of prepetition claims of employees. *See, e.g., Miltenberger v. Logansport Ry. Co.*, 106 U.S. 286, 312 (1882) (stating that payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of . . . [crucial] business relations"); *Gregg v. Metro. Trust Co.*, 197 U.S. 183, 187 (1905) (stating that "the payment of the employees of the [rail]road is more certain to be necessary in order to keep it running than the payment of any other class of previously incurred debts."); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175-76 (Bankr. S.D.N.Y. 1989) (finding that payment of prepetition wages, salaries, reimbursable

9

business expenses and health benefits to active employees of debtor airline authorized); *In re Chateaugay Corp.*, 80 B.R. 279, 286-88 (S.D.N.Y. 1987), *appeal dismissed*, 838 F.2d 59 (2d Cir. 1988) (approving lower court order authorizing debtor, prior to plan stage of case, to pay prepetition wages, salaries, expenses and benefits); *In re Gulf Air, Inc.*, 112 B.R. 152, 153-54 (Bankr. W.D. La. 1989) (permitting payment of prepetition wages, benefits and expenses as necessary to maintain going concern values and to assist reorganization efforts).

34.    The continued operation of the Debtors business depends on the retention and motivation of the Employees. The Debtors believe that, to avoid employee resignations and to maintain employee morale, it is critical that it be authorized to pay each of the Employees all compensation amounts that have been earned under the Debtors' prepetition contractual obligations or practices.

35.    It is equally essential that the Debtors take all actions reasonably necessary to continue on an uninterrupted basis in the ordinary course of business all of the employment policies that were in effect prior to the Petition Date. Payment of these obligations and the continuation of all of these programs and policies are essential to ensure that the Debtors retain the Employees and maintain morale.

36.    Moreover, the Debtors estimate that the amounts they seek to pay herein are entitled to priority under Sections 507(a)(3) and (a)(4) of the Bankruptcy Code, with very few conditional exceptions. Section 507(a)(3) of the Bankruptcy Code grants priority to employee claims for "wages, salaries, or commissions, including vacation, severance and sick leave pay" earned within ninety days before the filing of the applicable petition up to $15,150 per employee. Similarly, section 507(a)(4) of the Bankruptcy Code provides that claims for contributions to

10

certain employee benefit plans are also afforded priority treatment to the extent of the number of employees covered by each plan multiplied by $15,150, less any amounts paid pursuant to Section 507(a)(3) of the Bankruptcy Code.

37.      Thus, granting the relief sought herein would affect only the timing and not the amount of payment of the Prepetition Employee Obligations to the extent they constitute priority claims. Many Employees live from paycheck to paycheck and rely exclusively on receiving their full compensation or reimbursement of their expenses in order to continue to pay their daily living expenses. These Employees will be exposed to significant financial and health-related problems if the Debtor is not permitted to pay certain of the unpaid expenses and Prepetition Employee Obligations, particularly wages and other Employee Benefits. Moreover, the Debtors believe that if they are unable to honor the Prepetition Employee Obligations, Employee morale and loyalty will be jeopardized at a time when it is most critical. If the Debtors are not authorized to pay for the Employee Benefits, then many of the Employees may not be reimbursed or otherwise have their health benefit claims paid. In addition, certain Employees may become primarily obligated for the payment of these claims in cases where health care providers have not been reimbursed and may face having their health care services terminated. The Debtors believe that such uncertainty will cause significant anxiety at precisely the time the Debtors need the Employees to perform their jobs at peak efficiency.

## REQUEST FOR EXPEDITED CONSIDERATION

38.      The Debtors request expedited treatment in connection with the Motion because they require the immediate use of cash collateral to fund ongoing operations mentioned in the Motion and, specifically, to pay payroll on March 17, 2026. Accordingly, the Debtors request

11

that a hearing on use of cash collateral through March 31, 2026 be held at the convenience of the Court but no later than March 13, 2026 so that payroll may be approved and processed by the Debtors' payroll service in a timely manner.

39.　As of the filing of this Motion, no trustee, examiner or creditor's committee has been appointed in the above-captioned Chapter 11 cases. Notice of this Motion has been given via facsimile or electronic mail to the Office of the United States Trustee and counsel for and/or representatives of the Lenders as well as the Debtor's Top Twenty Unsecured Creditors and the Taxing Authorities. The Debtors submit that no other notice need be given in light of the exigencies of the circumstances and the irreparable harm to the Debtors, their estates and all parties in interest that would ensue if the relief requested herein is not granted.

40.　No previous request for the relief sought herein has been made to this or any other Court.

41.　Prior to filing this Motion, counsel for the Debtors contacted Counsel for the Office of the United States Trustee and Counsel for and/or representatives of the Lenders to advise them of the request for an expedited hearing and the relief requested therein.

12

WHEREFORE, the Debtors respectfully request that this Court enter an Order in the

form attached hereto and for such other and further relief as this Court deems just and proper.

Respectfully submitted,

**CIARDI CIARDI & ASTIN**

*/s/ Albert A. Ciardi, III*
Albert A. Ciardi, III, Esquire
Jennifer C. McEntee, Esquire
1905 Spruce Street
Philadelphia, PA  19103
Telephone: (215) 557-3550
Facsimile: (215) 557-3551
aciardi@ciardilaw.com
jcranston@ciardilaw.com

*Proposed Counsel for the Debtor*

Dated:   March 11, 2026