**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| In re: | : CHAPTER 11 |
|  | : |
| LIVECONNECTIONS.ORG, | : BANKRUPTCY NO. 26-10973 (AMC) |
|  | : |
| Debtor. | : |
|  | : |

**OBJECTION AND RESERVATION OF RIGHTS OF THE DELAWARE
VALLEY REGIONAL ECONOMIC DEVELOPMENT
FUND TO THE DEBTOR'S CASH COLLATERAL MOTION**

The Delaware Valley Regional Economic Development Fund ("DVREDF"), by and through its undersigned attorneys, hereby submits this Objection and Reservation of Rights to the Debtor's Motion for Use of Cash Collateral (the "Cash Collateral Motion").

**Background**

1. The Delaware Valley Regional Economic Development Fund ("DVREDF"), is a Pennsylvania nonprofit corporation with an address at 1500 Market Street, East Tower, 12th Floor, Philadelphia, Pennsylvania 19102.

2. The DVREDF provides financing to promote economic development and job growth throughout the Philadelphia metropolitan area.

3. LiveConnections.org d/b/a World Cafe Live (the "Debtor" or "LiveConnections"), is a Pennsylvania non-profit company that operates at 3025 Walnut Street in Philadelphia.

**The DVREDF Loan and the Loan Documents**

4. On December 23, 2021, the DVREDF extended a bridge loan (the "Loan") to LiveConnections in the maximum principal amount of Five Hundred Thousand Dollars ($500,000).

1

3/12/2026 SL1 4032699v1 108123.00015

5.    To evidence its obligation to repay its financial obligations to the DVREDF, LiveConnections executed a promissory note dated December 23, 2021 (the "Note") in the maximum principal amount of Five Hundred Thousand Dollars ($500,000).  A true and correct copy of the Note is attached hereto, made a part hereof, and marked as Exhibit "A."

6.    The terms of the Loan were set forth in a November 23, 2021 Letter Agreement between the DVREDF and LiveConnections (the "Letter Agreement").  A true and correct copy of the Letter Agreement is attached hereto, made a part hereof, and marked as Exhibit "B."

7.    The proceeds of the Loan were to be utilized to finance the purchase of audio, video, lighting and information technology equipment and systems for use in LiveConnections' business operations.  *See* Exhibit B, Letter Agreement Paragraph 1(a).

8.    The Letter Agreement included financial covenants that required LiveConnections to provide annual audited financial statements, quarterly financial statements (including profit and loss statements) and compliance certificates.

9.    Also on December 23, 2021, the DVREDF and LiveConnections executed a Security Agreement (the "Security Agreement") pursuant to which LiveConnections granted to DVREDF a first priority security interest in, and lien on, *inter alia*, the following (the "Collateral"):

> … all now owned or hereafter acquired Accounts, Chattel Paper, Contract Rights, Deposit Accounts, Documents, Equipment, Fixtures, General Intangibles, Goods, Instruments, Inventory, together with all Proceeds thereof.

A true and correct copy of the Security Agreement is attached hereto, and as part hereof, and marked as Exhibit "C".

2

10. Pursuant to the terms of the Note, all outstanding principal and accrued interest was due and payable on December 30, 2022. The maturity date was later extended by agreement of the parties to December 30, 2024 (the "Maturity Date").

### The Entry of Judgment against LiveConnections

11. LiveConnections failed to pay all outstanding principal and accrued interest on or before Maturity Date. Indeed, LiveConnections has not made a payment since October 1, 2023 (consisting of an interest payment). LiveConnections has not paid any of the principal indebtedness since the Loan was made in 2021.

12. By letter dated August 12, 2025 (the "Default Letter"), the DVREDF advised LiveConnections that all outstanding unpaid principal and interest became due and owing on December 23, 2024.

13. Additionally, the Default Letter advised that Additional Events of Default occurred under the Letter Agreement by virtue of LiveConnection's failure to perform numerous covenants.

14. As a result of the Event of Default under the Loan Documents, the DVREDF confessed judgment against the Debtor in the amount of Five Hundred Sixty Three Thousand One Hundred Fifty-Two Dollars and 43/100 ($563,152.43)(the "Judgment") in the Court of Common Pleas of Philadelphia County.

15. Thereafter, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on March 10, 2026 (the "Petition Date").

### Objection to Use of Cash Collateral

16. The DVREDF objects to the use of cash collateral because, among other things, the Debtor has failed to provide: (i) adequate protection of the DVREDF's interest in the Collateral; and (ii) sufficient information necessary to evaluate the proposed replacement liens.

3

17.     Under § 363(c)(2) of the United States Bankruptcy Code (the "Bankruptcy Code"), a debtor may not use cash collateral unless consent is obtained from creditors that have an interest in the collateral, or the bankruptcy court authorizes its use.  11 U.S.C. § 363(c)(2).

18.     If the creditor does not consent, cash collateral may be used by the debtor only to the extent that the court determines that the creditor's interest in the collateral is adequately protected.  11 U.S.C. § 363(e).  "Cash collateral" includes cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property.  *Id*. at § 363(a).

19.     Adequate protection is not defined in the Bankruptcy Code; however, § 361 provides three non-exclusive methods as examples of adequate protection:

(i)     periodic cash payments;

(ii)    additional or replacement liens; or

(iii)   other relief resulting in the indubitable equivalent of the secured creditor's interest.

11 U.S.C. § 361.

20.     The Debtor bears the burden of proof to demonstrate that the secured creditor is adequately protected for the purpose of using its cash collateral.  *In re Hari Ram*, 507 B.R. 114, 120 (Bankr. M.D. Pa. 2014); § 363(p)(1).

21.     When devising a proposal for adequate protection of a secured creditor's interest, the proponent "should as nearly as possible under the circumstances of the case provide the creditor with the value of his bargained for rights."  *Hari Ram*, 507 B.R. at 120.

22.     A bankruptcy court should apply the following standard when determining whether a debtor should be permitted to use cash collateral, the court must: (i) establish the value

4

of the secured creditor's interest; (ii) identify risk to the secured creditor's value resulting from the debtor's request for use of cash collateral; and (iii)  determine whether the debtor's adequate protection proposal protects value as nearly as possible against risk so that value consistent with the concept of indubitable equivalence. *Id.* at 125.

23.     The Budget supplied by the Debtors contemplates payments to a number of constituencies including, but not limited to: food and liquor suppliers, employees and other vendors.  However, the Budget does not provide for *any* payments to the DVREDF in consideration for the use of its cash collateral or adequate protection of its interest in the Collateral.

24.     Much of the Collateral consists of equipment and related personal property that is subject to depreciation.  The Debtor proposes to continue to utilize and depreciate the Collateral from the Petition Date through Plan confirmation which will cause further deterioration to the DVREDF's secured position. Whether couched as a cash collateral issue or, more broadly, adequate protection with respect to all of the Collateral, the failure to make any payments is untenable.

25.     This depreciation risk faced by the DVREDF is particularly acute given that the Debtor has not made any principal payments since the Loan was made in 2021 and has utilized the Collateral throughout that time period.

26.     Moreover, the information supplied by the Debtor fails to provide any meaningful detail as to the Debtor's current financial position including current assets (including, but not limited to, cash, accounts receivable and future bookings).  Thus, the proposal for replacement liens rings hollow insofar as creditors cannot evaluate the value of any such replacement lien.

3/12/2026 SL1 4032699v1 108123.00015

27.      No historical data is supplied to enable creditors to evaluate the *pro forma* projections on the Budget including, but not limited to, sales or expense projections.  Even assuming, *arguendo*, that the projections are credible, the projected net profit of $8,229.00 for the month of March, 2026 offers very little protection in the way of a replacement lien.

28.      The dearth of information is problematic insofar as the Debtor has consistently refused to comply with its financial covenants and obligations to share financial information.  In short, the DVREDF enters this bankruptcy case completely in the dark in terms of the Debtor's finances and operations.

29.      In addition to providing monthly payments to the DVREDF, replacement liens, section 507(b) protections, the proposed Interim Order is deficient for the following reasons:

(i)      the Debtor should be required to provide the DVREDF with immediate access to its financial books and records consistent with the financial covenants of the Letter Agreement;

(ii)      the Debtor should immediately supply documentation demonstrating that the Collateral is adequately insured and identifying the DVREDF as a lender's loss payee;

(iii)      if the Debtor intends to deviate from the Budget, such variance should remain within 5 percent (5%) of each budgeted category;

(iv)      the Debtor should provide a report comparing actual revenues and expenses with budgeted revenues and expenses for the same period and disclose any variance; and

(v)      the Order should include language indicating that entry of an Interim Order will not prejudice any party's rights to seek other relief including, without limitation, relief from the automatic stay/adequate protection, or dismissal or conversion of this case.

### Reservation of Rights

30.      Nothing in this Objection should be construed as the DVREDF waiving any rights, objections, arguments, interests or claims, or consenting to the use of any Collateral,

6

3/12/2026 SL1 4032699v1 108123.00015

without adequate protection, consenting to any charge or surcharge of any Collateral or the right to bring motions including, but not limited to, motions to dismiss or convert the case, motion for relief from the automatic stay or for adequate protection or any relief to which the DVREDF may be entitled under the respective loan documents or applicable law.

31.     The DVREDF reserves all rights to amend or modify this Objection or to join in any objection of any other party.

WHEREFORE, the Delaware Valley Regional Economic Development Fund respectfully requests the entry of an Order denying the Cash Collateral Motion and requests such other and further relief as this Court deems necessary and just.

STEVENS & LEE, P.C.

Dated:  March 11, 2026

By:  */s/ John C. Kilgannon*
John C. Kilgannon, Esquire
STEVENS & LEE, P.C.
1500 Market St.
18th Floor, East Tower
Philadelphia, PA 19102
(215) 751-1943
Fax (610) 371-7954
Email john.kilgannon@stevenslee.com

Attorneys for Delaware Valley Regional Economic Development Fund

7

3/12/2026 SL1 4032699v1 108123.00015