**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| In re: | : | CHAPTER 11 |
|  | : |  |
| LIVECONNECTIONS.ORG, | : | BANKRUPTCY NO. 26-10973 (AMC) |
|  | : |  |
| Debtor. | : |  |
|  | : |  |

**OBJECTIONS AND RESERVATION OF RIGHTS OF THE DELAWARE
VALLEY REGIONAL ECONOMIC DEVELOPMENT
FUND TO THE DEBTOR'S (I) CASH COLLATERAL MOTION; (II) INSURANCE
PREMIUM FINANCE MOTION; AND (III) MOTION FOR POST-PETITION LOAN**

The Delaware Valley Regional Economic Development Fund ("DVREDF"), by and through its undersigned attorneys, hereby submits this Objection and Reservation of Rights to the Debtor's: (i) Motion for Use of Cash Collateral (the "Cash Collateral Motion"); (ii) Insurance Premium Finance Motion (the "Insurance Motion"); and (iii) Motion for Post-Petition Loan (the "Loan Motion").[1]

**Preliminary Statement**

1. As this case approaches the one-month mark, the Debtor has yet to articulate how it intends to provide the DVREDF with adequate protection of its interest in the cash collateral. Indeed, the Debtor proposes to continue to utilize the DVREDF's collateral without providing any adequate protection payments or meaningful replacement liens. Indeed, the Debtor apparently concedes that it lacks any significant cash or accounts receivable that would secure a replacement lien. Nor has the Debtor supplied any financial documents that would enable the

---

[1] The DVREDF incorporates by reference the Objection to Motion to Use Cash Collateral filed on March 12, 2026 [Docket Item No. 17] (the "Initial Cash Collateral Objection"). Capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Initial Cash Collateral Objection.

1

DVREDF to conduct even the most rudimentary adequate protection analysis.  In short, the Debtor has not met its burden under section 361 of the Bankruptcy Code.

2.      This deficiency is exacerbated by the fact that, according to recent reports from the Philadelphia Inquirer, the Debtor's operations were shut down over the weekend for selling liquor without a license.2  Presumably, if the Debtor is able to continue its operations, the budgeted revenue and cost projections in the Debtor's cash collateral budget must be revised to reflect this development.

3.      With respect to the Insurance Motion, the Debtor proposes to provide the insurance finance company with a first priority lien on any insurance proceeds. The DVREDF has a first priority lien on such proceeds and should be named as lender's loss payee pursuant to the operative loan documents.  The Insurance Motion fails to establish any basis to impair the DVREDF's security interest and lien on insurance proceeds.

4.      Lastly, the Loan Motion does not specify how the Debtor intends to utilize the proceeds of the Callahan Loan or why the loan proceeds cannot be utilized to pay insurance premiums.  This information should be provided to creditors to evaluate the propriety of the loan. Further, any Order entered in connection with the Loan Motion should clarify that any administrative treatment for the loan should be limited to protections under section 364(b).

### Background

5.      The DVREDF is a Pennsylvania nonprofit corporation with an address at 1500 Market Street, East Tower, 12th Floor, Philadelphia, Pennsylvania 19102.

6.      The DVREDF provides financing to promote economic development and job growth throughout the Philadelphia metropolitan area.

---

2 http:www.inquirer.com/entertainment/music/world-café-live-liquor-license-arrest-20260406.html

2

7.      LiveConnections.org d/b/a World Cafe Live (the "Debtor" or "LiveConnections"), is a Pennsylvania non-profit company that operates at 3025 Walnut Street in Philadelphia.

### The DVREDF Loan and the Loan Documents

8.      On December 23, 2021, the DVREDF extended a bridge loan (the "Loan") to LiveConnections in the maximum principal amount of Five Hundred Thousand Dollars ($500,000).

9.      To evidence its obligation to repay its financial obligations to the DVREDF, LiveConnections executed a promissory note dated December 23, 2021 (the "Note") in the maximum principal amount of Five Hundred Thousand Dollars ($500,000).

10.      The terms of the Loan were set forth in a November 23, 2021 Letter Agreement between the DVREDF and LiveConnections (the "Letter Agreement").  A true and correct copy of the Letter Agreement is attached hereto, made a part hereof, and marked as Exhibit "A."

11.      The Letter Agreement provides that the DVREDF must be named lender's loss payee on any insurance policies obtained by LiveConnections.  Specifically, the Letter Agreement provides, in relevant part:

> [A]ll insurance maintained by the Borrower provide that the Lender shall be named as "lender loss payee" or "additional insured," as appropriate, and notified thirty (30) days prior to any termination, cancellation or material change in any such insurance, all of which shall be set forth in insurance certificates and endorsements issued by the insurance companies providing such insurance satisfactory, in form and substance, to the Lender.

See Exhibit A, ¶ 3(f).

12.      The proceeds of the Loan were to be utilized to finance the purchase of audio, video, lighting and information technology equipment and systems for use in LiveConnections' business operations.  *See* Exhibit A, Letter Agreement, ¶ 1(a).

3

**Objection to Use of Cash Collateral**

13.    The DVREDF objects to the use of cash collateral because, among other things, the Debtor has failed to provide: (i) adequate protection of the DVREDF's interest in the Collateral; and (ii) sufficient information necessary to evaluate the proposed replacement liens.

14.    Under § 363(c)(2) of the United States Bankruptcy Code (the "Bankruptcy Code"), a debtor may not use cash collateral unless consent is obtained from creditors that have an interest in the collateral, or the bankruptcy court authorizes its use.  11 U.S.C. § 363(c)(2).

15.    If the creditor does not consent, cash collateral may be used by the debtor only to the extent that the court determines that the creditor's interest in the collateral is adequately protected.  11 U.S.C. § 363(e).  "Cash collateral" includes cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property.  *Id*. at § 363(a).

16.    Adequate protection is not defined in the Bankruptcy Code; however, § 361 provides three non-exclusive methods as examples of adequate protection:

(i)    periodic cash payments;

(ii)    additional or replacement liens; or

(iii)    other relief resulting in the indubitable equivalent of the secured creditor's interest.

11 U.S.C. § 361.

17.    Significantly, the Debtor bears the burden of proof to demonstrate that the secured creditor is adequately protected for the purpose of using its cash collateral.  *In re Hari Ram*, 507 B.R. 114, 120 (Bankr. M.D. Pa. 2014); § 363(p)(1).

4

18.    Essentially, "adequate protection is designed to preserve the secured creditor's position at the time of the bankruptcy." *In re Dunes Casino Hotel*, 69 B.R. 784, 793 (Bankr. D.N.J. 1986). As the *Dunes* Court observed, relying on the legislative history to the Code:

> [Adequate protection] is not intended to be confined strictly to the constitutional protection required. The section, and the concept of adequate protection, is based as much on policy grounds as on constitutional grounds. Secured creditors should not be deprived of the benefit of their bargain. There may be situations in bankruptcy where giving a secured creditor an absolute right to his bargain may be impossible or seriously detrimental to the bankruptcy laws. Thus, this section recognizes the availability of alternate means of protecting a secured creditor's interests. Though the creditor might not receive his bargain in kind, the purpose of the section is to insure that the secured creditor receives in value essentially what he bargained for.

*Id.* at 793-94 (quoting Id. at 793-94 (quoting H.R. Rep. No. 595 at 339, 1978, *U.S. Code Cong. & Ad. News* at 5787, 6295); see also *In re Swedeland Dev. Corp.*, 552, 567 (3d Cir. 1994) ("There, of course, is no doubt that the policy underlying Chapter 11 is quite important. Nevertheless, Congress did not contemplate that a creditor could find its priority position eroded and, as compensation for the erosion, be offered an opportunity to recoup dependent upon the success of a business with inherently risky prospects.").

19.    Adequate protection seeks "to insure that the creditor receives the value for which he bargained prebankruptcy," *Swedeland,* 16 F.3d 552, 564 (3d Cir. 1994) (quoting *In re O'Connor*, 808 F.3d 1393, 1396 (10th Cir. 1987) and its goal is to "safeguard the secured creditor from diminution in the value of its interest during the Chapter 11 reorganization."

20.    Much of the Collateral consists of equipment and related personal property that is subject to depreciation. The Debtor proposes to continue to utilize and depreciate the Collateral from the Petition Date through Plan confirmation which will cause further deterioration to the DVREDF's secured position. Whether couched as a cash collateral issue or, more broadly,

5

adequate protection with respect to all of the Collateral, the failure to make any payments is untenable.

21.     To date, the Debtor has failed to address how it intends to provide the DVREDF with adequate protection.  No financial documents have been supplied thus far.  The Debtor appears to concede that it has no cash or accounts receivable.  As such, replacement liens are not an option.  Further, the Debtor has not made any indication that it is willing to make adequate protection payments to the DVREDF.

22.     While the dearth of financial information, or a cognizable adequate protection proposal, may have been tolerable at the outset of this bankruptcy case, the time has come for the Debtor to be held to the standards established under section 361 of the Bankruptcy Code.

**<u>Objection to Insurance Finance Motion</u>**

23.     The DVREDF does not object to the Debtor's proposal to secure insurance premium financing.  However, as part of the relief requested in the Insurance Motion, the Debtor proposes to grant the Premium Finance Company with a lien on any loss payments under the Insurance Policies.  Such liens would interfere with the DVDREF's security interest and liens on all Collateral.

24.     Further, the Insurance Motion also proposes to enable the cancellation of the Insurance Policies following an uncured default only upon notice to the Debtor.  As a secured lender with an interest in ensuring that its Collateral is adequately insured, the DVREDF requests that any such notice also be provided to the DVREDF.

25.     Additionally, the Debtor has yet to supply the DFREDF with proof of insurance or that it was named as lender's loss payee as required under the First Interim Cash Collateral Order.

6

4/7/2026 SL1 4062189v1 108123.00015

**Objection to the Loan Motion**

26.     As a threshold matter, the proposed Loan Motion does not specify what expenses will be paid with the proceeds of the loan.  That information should be provided so that creditors may evaluate the propriety of the loan and whether it should qualify as an administrative expense.

27.     Further, Paragraph 5 of the proposed Order states:

> 5.  The Callahan Loan and any advance under the Callahan Loan shall be repaid through the Debtors' Plan of Reorganization and the method, priority and terms shall be set forth in the Plan of Reorganization…
>
> Proposed Order, ¶ 5.

28.     This language should be revised to confirm that the priority afforded to any payments made to Mr. Callahan is consistent with the terms of the Loan Motion.  In other words, the Loan may be entitled to treatment as administrative expense under section 364(b) but not section 364(c).

29.     As an additional matter, the Loan Motion does not address how the proposed loan will address the apparent long term operational deficits faced by the Debtor.  The proposed budgets produced by the Debtor reflect significant monthly operational losses only to be exacerbated by the loss of liquor sales.  At issue is whether ongoing operations will only prove to be detrimental to the bankruptcy estate.

**Reservation of Rights**

30.     Nothing in this Objection should be construed as the DVREDF waiving any rights, objections, arguments, interests or claims, or consenting to the use of any Collateral, without adequate protection, consenting to any charge or surcharge of any Collateral or the right to bring motions including, but not limited to, motions to dismiss or convert the case, motion for

4/7/2026 SL1 4062189v1 108123.00015

relief from the automatic stay or for adequate protection or any relief to which the DVREDF may be entitled under the respective loan documents or applicable law.

31.     The DVREDF reserves all rights to amend or modify this Objection or to join in any objection of any other party.

WHEREFORE, the Delaware Valley Regional Economic Development Fund respectfully requests the entry of an Order denying the Cash Collateral Motion, the Insurance Motion and the Loan Motion to the extent they are inconsistent with this Objection and requests such other and further relief as this Court deems necessary and just.

STEVENS & LEE, P.C.

Dated:  April 7, 2026                    By: */s/ John C. Kilgannon*
                                         John C. Kilgannon, Esquire
                                         STEVENS & LEE, P.C.
                                         1500 Market St.
                                         18th Floor, East Tower
                                         Philadelphia, PA 19102
                                         (215) 751-1943
                                         Fax (610) 371-7954
                                         Email john.kilgannon@stevenslee.com

                                         Attorneys for Delaware Valley Regional Economic
                                         Development Fund

4/7/2026 SL1 4062189v1 108123.00015